**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PAUL WEDDLE,<br><br>                   Plaintiff,<br><br>        vs.<br><br>ALAN NUTZMAN et al.,<br><br>                   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

2:15-cv-02041-RCJ-NJK

**ORDER**

          This case arises out of allegedly excessive force during an arrest.  Pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 34).

I.        **FACTS AND PROCEDURAL HISTORY**

          On or about March 2, 2014, Plaintiff Paul Weddle was arrested after his unauthorized use of an aircraft at the Boulder City Airport. (*See* Am. Compl. ¶ 9, ECF No. 30).  Plaintiff alleges he was "assaulted and battered" despite not resisting or assaulting the arresting officers. (*See id.*).  He has sued Officers Alan Nutzman, Chad Richner, David Olson, and Todd Cazet, as well as the City of Boulder City ("the City") in this Court for: (1) violation of the Fourth Amendment under 42 U.S.C. § 1983; (2) intentional infliction of emotional distress ("IIED"); (3) battery; (4) negligence; and (5) civil rights conspiracy under § 1985.  Defendants have moved for summary judgment.

///

## II.   SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## III.   ANALYSIS

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48

(1988).  There is no respondeat superior liability under § 1983.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  In order to hold a municipality liable for the actions of its officers, the allegedly unconstitutional actions must have been pursuant to an official municipal policy, ordinance, regulation, or officially adopted decision.  *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).  The Court of Appeals has explained:

> In a *Monell* claim, there are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (citations and internal quotation marks omitted).

Natural persons sued in their individual capacities may enjoy qualified immunity against claims of constitutional violations.  *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985).  An official is not entitled to qualified immunity if: (1) there has been a constitutional violation; and (2) the state of the law was clear enough at the time of the violation that a reasonable person in the defendants' position would have known his actions violated the plaintiff's rights.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Courts have discretion to address the second prong of the *Saucier* test first in order to avoid unnecessary constitutional rulings.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  A "clearly established" right for the purpose of qualified immunity is one that has been announced by the Supreme Court or the relevant Court of Appeals, i.e., binding authority.  *See Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004).

The constitutional reasonableness of a seizure is examined under a totality-of-the-circumstances:

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake.  Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham v. Connor*, 490 U.S. 386, 396–97 (1989) (citations omitted).

The Court finds that the individual Defendants are entitled to summary judgment against the excessive force claim under § 1983 based on qualified immunity.  There is no clear precedent indicating that the officers' actions in this case violated the Fourth Amendment.  Defendants responded to a call that Plaintiff had stolen an aircraft, and they watched while Plaintiff conducted "touch-and-gos" before parking the aircraft.  In the three "dash cam" videos adduced by both sides, several officers can be seen approaching the aircraft with weapons drawn, yelling at Plaintiff to exit the aircraft.  Plaintiff is seen lowering a rope ladder, climbing down it, and standing with his hands up at chest to shoulder level to face the two officers nearest him.  One officer, who appears barely as tall as Plaintiff's shoulders, then pulls Plaintiff forward to the

ground by his left arm.  Plaintiff strikes his face against the ground, but it appears to occur slowly enough that Plaintiff has time to partially break his fall with his right hand.  Plaintiff struck his face not because his head or neck was grabbed, but because he bent at the waist as he was pulled forward by the left arm, in an apparent attempt to resist going to the ground (Plaintiff crouches slightly before the officer grabs him, as if to defend his stance and resist being moved), and then lost his balance.  The officer then stands above Plaintiff and shackles his hands behind his back.  Two other officers then appear to inspect the plane from the ground with flashlights while asking Plaintiff if is there is anyone else inside.  After approximately one minute, officers help Plaintiff to a sitting position, telling him to keep his legs straight.  When he does not respond, one officer yells again for him to keep his legs out and kicks his feet forward.  Plaintiff remains in that seated position for approximately twenty more minutes, at which point he is slowly helped to his feet and led away.

Neither the takedown nor the foot-kick constituted force that would be recognized by an officer as clearly excessive.  Plaintiff was known to have stolen an aircraft and flown it without clearance.  It was unknown whether he was armed, and the quick takedown was reasonably necessary to ensure the safety of the arresting officer facing a very large, unrestrained man who had just exited a stolen vehicle.  A quick motion by a large unrestrained man could have permitted him to run free, injured the arresting officer, or even wrestled away the arresting officer's pistol.  The only other act of force used was the kick to Plaintiff's foot to force his leg straight when he ignored a command to straighten it himself.

Plaintiff cites a case where an officer shot a mentally-ill suspect who had not committed any serious offense in the face with a 12-gauge shotgun loaded with a lead-filled "beanbag" from a lethal distance of 30-feet, knocking the suspect off of his feet, destroying one of his eyes, and

leaving lead shot in his skull. *See Deorle v. Rutherford*, 272 F.3d 1272, 1275, 1279–80 (9th Cir. 2001).  The force used here was of such a lesser magnitude, and the offense of which Plaintiff was suspected was of such a greater magnitude, that the Court cannot say the *Deorle* case put Defendants on clear notice that the force used here would be excessive (even assuming a reasonable jury could find it to have been).

Neither is there evidence adduced implicating the City in any policy or custom of unconstitutional conduct as to excessive force, so the *Monell* claim fails.  And § 1985(3) only applies to equal protection-type claims, i.e., where the motivation of the conspirators is based on race or some other protected class. *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1518 (9th Cir. 1987) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Plaintiff makes no such allegations.  Plaintiff has agreed to abandon the *Monell* and § 1985 claims.  Finally, the Court declines jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 34) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the Clerk shall enter judgment as to the federal claims and close the case.

IT IS SO ORDERED.

Dated January 4, 2017.

_____
ROBERT C. JONES
United States District Judge